Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4795 | **DATE** | 10/7/2004 |
| **CASE TITLE** | Semien vs. Life Ins Co of North America et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Semien's motion (Doc 18-1) for summary judgment is denied and defendants' motion (Doc 24-1) for summary judgment is granted. Semien's motion (Doc 28-1) to strike is denied as moot. Final judgment entered.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | | number of notices |
| | Notices mailed by judge's staff. | | OCT 08 2004 |
| | Notified counsel by telephone. | | date docketed |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials |
| | Copy to judge/magistrate judge. | | |
| SCT | courtroom deputy's initials | | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KATHLEEN SEMIEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 03 C 4795 |
| | ) | |
| LIFE INSURANCE COMPANY OF NORTH | ) | |
| AMERICA, a CIGNA COMPANY, and BP | ) | |
| LONG TERM DISABILITY (LTD) PLAN, | ) | **DOCKETED** |
| | ) | |
| Defendant. | ) | OCT 0 8 2004 |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on the parties' cross-motions for summary judgment. For the reasons set forth below, the plaintiff's motion for summary judgment is denied and the defendants' motion for summary judgment is granted.

### BACKGROUND

Plaintiff Kathleen Semien is a former employee of BP Amoco, the administrator of Defendant BP Long Term Disability Plan ("the Plan"). Defendant Life Insurance Company of North America ("LINA") administers claims made to the Plan for disability benefits. Over the time period at issue in the case, Semien received treatment from her primary care physician, two psychiatrists, two hepatologists, a gastroenterologist, a rheumatologist, a pain specialist, and a neurosurgeon. Not surprisingly, the team of

doctors attending to Semien's care generated an extensive amount of medical information. Though the story they tell is not completely consistent, we summarize a brief chronology here to give an overall flavor of Semien's diagnoses.

In May 2000, Semien began treatment for hepatitis C with a hepatologist named Dr. Conjeevaram. In June 2000, she underwent a cardiologic stress test, which revealed normal heart function though the test stopped short because of Semien's fatigue. In November 2000, Semien began her disability leave, describing her condition as hepatitis C, fatigue, anemia, headaches, nausea, chronic low back pain, muscle pain, rash, hypothyroidism, chronic depression, irritable bowel syndrome, hair loss, mental confusion, and sleep disorder.[1]

In April 2001, Dr. Conjeevaram conducted a basic skills assessment for Semien and concluded that she could perform basic activities for less than 1/3 of an 8-hour workday. In July, Dr. Te, Semien's second hepatologist recorded improvement in her performance, including an ability to process sensory information, reach at desk level, and perform fine manipulation for 2/3 to all of an 8-hour work day. December held further improvement in Semien's condition; a second cardiologic stress test which showed normal heart function and tests for hepatitis C were negative.

---

[1] Semien also included an undefined condition called CAD.

In January 2002, Semien underwent spinal surgery to address her continued low back pain. Two months later, Dr. Betman, her primary care physician, echoed Dr. Te's July 2001 basic activity assessment findings. In June, a colonoscopy showed general intestinal health, and a test for hepatitis C showed no evidence of the disease. In July, Semien received treatment from a Dr. Nagle for carpal tunnel syndrome and examination for other arm pain.

As of August, the end of Semien's two-year initial disability period approached. At that time, one of her psychiatrists, Dr. Skerchock, could not estimate when she would be able to return to work. By October, Dr. Skerchock's assessment had changed somewhat; she concluded that Semien could perform within an adequate range of performance though probably not at her best level for long periods. She stated that she expected that Semien's condition would stabilize through further treatment and medication. This same month, Semien was diagnosed with bone spurs in her cervical spine.

In November 2002, with the end of the initial 24 months imminent, Dr. Betman stated that Semien could gradually return to work at BP Amoco. Dr. Koziol, another psychiatrist seeing Semien concurred, reporting that Semien was stable and responding well to treatment. Dr. Koziol also noted that Semien had clear improvement in her energy level and planned to return to work in January 2003. In slight contrast, Dr.

Skerchock stated at this same time that Semien's return date was "in negotiation" but that Semien could perform basic administration or support functions as transitional duty if BP Amoco offered such an option. On November 22, Semien's long-term disability benefits were discontinued on the grounds that the conditions that had given rise to Semien's initial disability determination had been treated successfully and that she was able to perform the duties of her prior occupation.

The following month, Drs. Te, Fintel, and Ruderman (a hepatologist, gastroenterologist, and rheumatologist, respectively) each gave the go-ahead for Semien to return to work in their respective areas of treatment. Dr. Liu, who had performed Semien's back surgery, stated that she should not return to work because of her continuing pain and need for narcotic medication. On January 7, 2003, LINA received Semien's appeal of the decision to terminate her benefits.

Meanwhile, company medical staff were engaged in a review of Semien's file to determine if she could indeed resume her former duties. They concluded that she could not return to her previous job and terminated her medical leave and her employment on January 30, 2003. The next day, Dr. Skerchock wrote a letter to Dr. Betman, stating that Semien was not employable at all, and Dr. Betman wrote a letter addressed to "whom it may concern" that also stated Semien was unable to sustain full time employment. Semien supplied LINA with additional information about her treatment,

including the reports detailed above from Drs. Liu, Nagle, and Koziol, for consideration in the appeal decision.

In May 2003, LINA submitted Semien's file to psychiatric and physical medicine specialists for review and comment on her ability to perform sedentary or light duty occupations. Both doctors concluded that, although Semien could not return to her former employment, there were jobs within her field not precluded by her medical limitations. After receiving the reports of these two physicians, LINA submitted them as the basis for a "transferable skills assessment," whereby an outside company compared Semien's reported limitations with an array of occupations for which she was qualified and that approximated her prior earning level. The results of this assessment stated that Semien could work as a chemical engineer (a position she had held for several years before becoming an environmental business manager with BP Amoco), a chemical research engineer, or an absorption and adsorption engineer. After receiving the reports of the two physicians and the skills assessment, LINA denied Semien's appeal and the denial of benefits became final.

Shortly thereafter, Semien filed the instant suit with LINA as the sole defendant. Discovery proceeded, and the parties ultimately found themselves before the court on a motion to compel filed by Semien. Not long after the denial of that motion on April 20, 2004, Semien amended her complaint to add the Plan as a defendant. Her motion

for summary judgment soon followed, which the defendants countered with a cross-motion for judgment in their favor.

**LEGAL STANDARD**

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact ." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed.R.Civ.P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); rather, "[a] genuine issue exists when the evidence is such that a reasonable jury could find for the non-movant," Buscaglia

v. United States, 25 F.3d 530, 534 (7th Cir. 1994). When reviewing the record we must draw all reasonable inferences in favor of the non-movant; however, "we are not required to draw every conceivable inference from the record–only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991).

When parties file cross motions for summary judgment, each motion must be assessed independently, and denial of one does not necessitate the grant of the other. M. Snower & Co. v. United States, 140 F.2d 367, 369 (7th Cir. 1944). Rather, each motion evidences only that the movant believes it is entitled to judgment as a matter of law on the issues within its motion and that trial is the appropriate course of action if the court disagrees with that assessment. Miller v. LeSea Broadcasting, Inc., 87 F.3d 224, 230 (7th Cir. 1996). With these principles in mind, we turn to the parties' motions.

## DISCUSSION

In ERISA benefit denial cases such as this one, we must first address the issue of the standard of review that applies to the administrator's decision. See, e.g., Morton v. Smith, 91 F.3d 867, 870 (7th Cir. 1996). As LINA points out, we have already visited this topic in the course of deciding the April motion to compel and concluded that the decision had to be examined under the "arbitrary and capricious" standard of review. Semien argues that the key issue in that decision was not what standard would be applied and that we are correspondingly free to apply a de novo standard, which she

claims is the correct analysis. We disagree. As our opinion on the motion to compel clearly stated, a decision of the applicable standard of review was a threshold question in deciding the motion to compel. Indeed, the outcome of that motion would have been exactly the opposite if we had concluded that de novo review was appropriate in this case. Semien did not argue the point in her reply brief in support of the motion to compel beyond asserting that the decision was premature, and she did not seek reconsideration of the point when the ruling was issued. As a result, our prior decision remains the law of the case and dictates the standard that we will apply to today's decision.

In any event, the plan documents afford discretion to the plan administrator to determine benefit eligibility and specifically invoke the arbitrary and capricious standard. See "BP America Long-Term Disability Plan," Appendix to Pl.'s LR 56.1 Statement, Vol. 4, Tab C, p. 10. The Administrative Services Agreement also provided in Tab C evidences the relationship between the plan administrator and LINA such that LINA would screen and process claims to determine benefit eligibility of claimants.[2]

---

[2] Semien appears to argue that the Administrative Services Agreement is not valid because the plan itself names Prudential Life Insurance as the claims administrator. However, this is counter to the provisions of the plan itself, which state that both the plan administrator and the claims administrator have authority "to grant or deny all claims for benefits and to determine all benefit eligibility issues." Semien has offered no reason why a delegation of the Plan Administrator's authority, and specifically the one to LINA, under this provision would be invalid.

As the arbitrary and capricious standard would apply to any decision by the administrator, it would also apply to a decision made by LINA, to whom the administrator had delegated the authority to make such determinations.

When the arbitrary and capricious standard of review applies, "any questions of judgment are left to the administrator of the plan." Trombetta v. Cragin Fed. Bank for Savings Employee Stock Ownership Plan, 102 F.3d 1435, 1438 (7th Cir. 1996). A decision is not arbitrary or capricious unless the party making the decision relies on factors that Congress did not intend to be considered, entirely ignored an important aspect of the particular problem, offers a rationale for its decision that flies in the face of the available evidence, or is so implausible that it cannot be sustained. See id. If it is possible to offer a reasoned explanation of a particular outcome, that outcome cannot be deemed to be arbitrary and capricious. See Militello v. Central States, Southeast and Southwest Areas Pension Fund, 360 F.3d 681, 686 (7th Cir. 2004).

The medical information detailed above is undisputed by the parties. It supports, without straining, a conclusion that Semien was capable of performing occupations for which she was qualified as of November 2002. See Ladd v. ITT Corp., 148 F.3d 753, 754 (7th Cir. 1998). The file reflects conflicting opinions of the various medical professionals, but upon its submission to two separate experts for review, the conclusion was the same: Semien was not prevented from returning to a job suitable to her

experience and training by her physical or psychiatric limitation. See Leipzig v. AIG Life Ins. Co., 362 F.3d 406, 409 (7th Cir. 2004). Three specific occupations, one of which she had already performed, were identified as being amenable to her situation. While there is certainly evidence within the record that would support a contrary result, one in Semien's favor, its presence or even its greater weight is of no moment under the arbitrary and capricious standard that applies to our review of the decision rendered. See Leipzig v. AIG Life Ins. Co., 362 F.3d 406, 409 (7th Cir. 2004). Consequently, there is no basis to overturn the denial of Semien's benefits.[3] Defendants are entitled to summary judgment in their favor. For the same reasons, Semien's motion for summary judgment must be denied.

Semien also filed a motion to strike two documents offered by Defendants in conjunction with their Local Rule 56.1 Statement of Material Facts. Neither of these documents is found within the record that the administrator considered, and it formed no part of our decision. The motion to strike is accordingly denied as moot.

## CONCLUSION

---

[3] Moreover, in the circumstances of this case, the denial of benefits would survive even if we applied the de novo standard. The medical opinions given by Semien's treating physicians on her myriad conditions are inconsistent at best and contradictory at worst, with some of her doctors even disagreeing with their own diagnoses in a space of as little as two weeks. The concurrence of both independent experts, who examined the medical evidence as a whole, leads us to agree that a denial of benefits was appropriate, even under the more relaxed standard.

Based on the foregoing analysis, Semien's motion for summary judgment is denied and Defendants' motion for summary judgment is granted. Semien's motion to strike is denied as moot.

_____
Charles P. Kocoras
Chief Judge
United States District Court

Dated: ___October 7, 2004_____